ELECTRONICALLY FILED
Washington County Circuit Court
Kyle Sylvester, Circuit Clerk
2019-Jul-03 14:20:34
72CV-19-1688
C04D05 : 47 Pages

# IN THE CIRCUIT COURT OF WASHINGTON COUNTY, ARKANSAS
## CIVIL DIVISION

| | |
|---|---|
| **LETHAS PIES, LLC** | ) |
| An Arkansas Limited Liability Company | ) |
| **RHONDA GLENN** | ) **CLASS ACTION COMPLAINT** |
| An Individual | ) |
| **TIMOTHY GLENN** | ) |
| An Individual | ) |
| **On behalf of themselves and all others** | ) |
| **similarly situated.** | ) |
| | ) |
| **Plaintiffs** | ) |
| **v.** | ) **CASE NO.:** _____ |
| | ) |
| **PRINCIPIS CAPITAL, LLC** | ) |
| A New York Limited Liability Company | ) **DEMAND FOR JURY TRIAL** |
| **JOHN DOES 1-10** | ) |
| **JOHN DOES 11-20** | ) |
| | ) |
| **Defendants** | ) |

## CLASS ACTION COMPLAINT

Comes now the Plaintiffs on behalf of themselves and on all others similarly situated by and through their counsel of record and for their Class Action Complaint against the Defendants state the following:

### I.    PARTIES AND JURISDICTION

1.    Letha's Pies, LLC ("Letha's Pies") is an Arkansas limited liability company that is operating in good standing out of its principal address located in Washington County, Arkansas. Letha's Pies makes frozen fried pies for resale to restaurants. Letha's Pies entered into a Purchase and Sale of Future Receivables Agreement ("PC Merchant Agreement") with Separate Defendant Principis Capital, LLC ("PC"). Although this Complaint is not filed for the purpose of enforcing the PC Merchant Agreement, it is referenced throughout this Complaint and attached hereto as Exhibit A.

1

**EXHIBIT**

**1**

2.       Separate Plaintiff, Rhonda Glenn, is an Arkansas resident living in Washington County, Arkansas and along with her husband, Timothy, owns Letha's Pies. Rhonda Glenn personally guaranteed the PC Merchant Agreement.

3.       Separate Plaintiff, Timothy Glenn, is an Arkansas resident living in Washington County, Arkansas and along with his wife, Rhonda, owns Letha's Pies. Timothy Glenn personally guaranteed the PC Merchant Agreement.

4.       PC is a New York limited liability company whose principal location is 499 Chestnut Street, Suite 108, Cedarhurst, NY 11516 and who can be served at the same location.

5.       This is a class action lawsuit seeking money damages pursuant to Arkansas Rule of Civil Procedure 23. Plaintiff files this lawsuit for the purpose of certifying a class of Arkansas-only residents pursuant to A.R.C.P. 23.

6.       Neither Plaintiffs' nor any individual Class Member's claim is equal to or greater than seventy-five thousand dollars ($75,000), inclusive of costs and attorney fees. Moreover, the total aggregate damages of the Plaintiff and all Class Members, inclusive of costs, attorney fees, are less than five million dollars ($5,000,000). As such, there is neither diversity nor Class Action Fairness Act jurisdiction for this claim in federal court. *See* 28 U.S.C.A. § 1332.

7.       Based on information and belief, PC operates affiliated entities and acts together with these entities as a joint enterprise. The true names and capacities of these affiliated entities are unknown to the Plaintiffs and are therefore sued herein by fictitious names, John Does 1 through 10. Plaintiffs will seek to amend this complaint and include these John Doe defendants' true names and capacities when they are ascertained. Each of the fictitiously named defendants is responsible in some manner for the conduct alleged herein and for the injuries suffered by the Class (as defined below).

2

8.        Based on information and belief, PC utilizes many independent marketers, independent sales organizations, and employees that market and promote merchant agreements in the state of Arkansas for their own financial gain.  The true names and capacities of these independent marketers/employees are unknown to the Plaintiff and are therefore sued herein by fictitious names, John Does 11 through 20.  Plaintiffs will seek to amend this complaint and include these John Doe defendants' true names and capacities when they are ascertained. Each of the fictitiously named defendants is responsible in some manner for the conduct alleged herein and for the injuries suffered by the Class (as defined below).

9.        PC marketed, promoted and offered its products to Arkansas citizens and entered contracts with Arkansas citizens and/or entities.  The PC Merchant Agreement entered between the Plaintiffs and PC was entered in Washington, County, Arkansas.  Venue lies properly with this court because the acts and conduct complained of occurred in substantial part in Washington County.

10.      This Court has jurisdiction over the parties.  This lawsuit is not brought to enforce the rights and/or obligations contained in the PC Merchant Agreement but is instead brought to enforce Arkansas's securities laws.  As such, the venue selection clause and choice of law clause found in the PC Merchant Agreement do not govern.

11.      This action is being brought to enforce the Arkansas Securities Act. *See* Ark. Code Ann. § 23-42-101 *et. seq*.  As such, any arbitration clause contained in the PC Merchant Agreement is inapplicable to this action.

12.      Further, under the Arkansas' Securities Act, the proper venue for bringing this action is the "county in which any act was performed in furtherance of the transaction which violated this chapter." *See* Ark. Code Ann. §23-42-105.  The Arkansas Securities Act provides

3

the right to enforce the act through a class action.[1] This right cannot be waived. *See* Ark. Code Ann. § 23-42-109. Additionally, the PC Merchant Agreement itself, having been entered in violation of the Arkansas Securities Act, is an illegal contract whose terms are void. As such, any arbitration clause contained in the PC Merchant Agreement is void as a matter of law.

13.     Additionally, the arbitration clause contained in the PC Merchant Agreement is illusory. The arbitration clause carves out any claim up to the Specified Amount (referenced below) plus thirty-three percent (33%) and allows those claims to be brought through a court proceeding. In addition, any arbitration decision is subject to judicial review where the court may confirm, modify or vacate the arbitrator's decision.

14.     Finally, any arbitration clause contained in the PC Merchant Agreement is unenforceable under state contract law and equity.     Therefore, the arbitration clause is unenforceable under the Federal Arbitration Act.[2] The total lack of any mutuality makes the arbitration clause binding only on the merchant and, therefore, unconscionable. To wit, while PC seeks to limit a Plaintiff's remedies, PC is afforded certain "self-help" remedies or extra-judicial remedies not afforded a merchant. PC is provided a power of attorney with which it can automatically debit from the merchant's account[s] any amount of money owed under the PC Merchant Agreement. Further, PC is able to utilize the extra-judicial remedies that comes with a UCC lien. Finally, in those instances where the self-help remedy does not satisfy PC, PC's practice is to ignore the arbitration agreement and file claims against a merchant in the civil courts of New York pursuant to the carve-out referenced above. *See,* e.g. *Principis Capital, LLC v. Just Me Inc.,*

---

[1] *BNL Equity Corporation et. al. v. Pearson et. al.,* 340 Ark 351, 10 S.W.3d 838 (2000)
[2] 9 U.S.C.A. § 2

4

*et. al.*, Civil Court of the City of New York, County of New York Index No.: 160396/2017.[3]  As

such, the arbitration clause only serves to restrict the merchant's rights and remedies.

15.     This action is brought on behalf of the merchants who entered into  the merchant

agreements with the Defendants and seeks to (1) rescind those transactions and (2) to recover any

moneys paid by the merchants to the Defendants in an amount above and beyond the amount

received by the merchants from the Defendants and to collect any origination fees paid as part of

the transaction to any unregistered dealer/broker.

## II.     INTRODUCTION

16.     This is a class action claim brought by the above-named Plaintiffs on behalf of

themselves and all other entities and individuals similarly situated, through their counsel, against

the named Defendants for violating the Arkansas Securities Act (Ark. Code Ann. §23-42-101 *et.*

*seq.*).

17.     Defendants are part of a lucrative Merchant Cash Advance industry.  PC and John

Does 1-10 (collectively referred to herein as "PC") actively market, solicit, offer and promote the

PC Merchant Agreement to unsophisticated, Arkansas small businesses facing an immediate need

for cash flow.

18.     The PC Merchant Agreement and other similar agreements used in this industry are

primarily sold by "cold-calling" small businesses using various communication mediums

including: telephone, email, texting, social media, or direct mail.  Companies in this industry use

both in-house employees and/or third-party brokers to reach out to small businesses across the

---

[3] *See also Hayes v. Cty. Bank,* 185 Misc. 2d 414, 418, 713 N.Y.S.2d 267, 270 (Sup. Ct. 2000); *Showmethemoney Check Cashers, Inc. v. Williams,* 342 Ark. 112, 120, 27 S.W.3d 361, 366 (2000); *Hull v. Norcom, Inc.,* 750 F.2d 1547, 1550 (11th Cir. 1985)

nation, including Arkansas, offering an infusion of operating capital which can be delivered to the merchant within a day or two of receiving the merchant's application.

19. PC also promotes its cash advances via the internet where it represents to Arkansas small businesses that "It is not a loan: you are literally selling us a portion of your future credit card sales or total deposits." PC also promises a small business owner a $5 Starbucks gift card just for submitting an application. Such marketing schemes are designed to induce unsophisticated business owners without adequate access to capital markets. *See* selected portions of PC's website attached hereto as Exhibit B and incorporated herein by reference as if set forth in full.

20. Through its website, PC offers to give wholesalers, payment processing professionals, leased equipment suppliers and other "Independent Sales Organizations (ISOs)" the opportunity to refer a merchant to them and receive a referral fee of between $500 and $1,000, depending on the size of the "deal." As such, PC is incentivizing individuals and businesses to market their Merchant Agreements. PC informs their revenue sharing "partners" that PC specializes in financing merchants with "severe credit issues including those with FICOs of under 525." *Id.*

21. Under this scheme, suppliers act both as creditors and as ISOs and place enormous pressure on small businesses to pay delinquent invoices. The ISO is incentivized to threaten the small business to contact PC or be subject to it's own collection efforts. As such, small businesses will, to escape the proverbial frying pan, jump into the fire. While the small business burns up, PC and its ISOs make outrageous profits.

22. PC and other cash advance companies characterize and market these agreements as the purchase of future accounts receivable or the purchase of future receipts.

23.     The characterization set forth in the above immediately preceding paragraph is false considering no particular account receivables are identified as part of the purchase and the receivables are not booked as sold or assigned. As such, no assets are transferred unless and until the merchant defaults under the terms of the repayment. Instead, these agreements entitle PC and the cash advance companies like it to immediately share in the merchant's gross funds received, irrespective of whether those funds arise from accounts receivable or another source.

### III.     FACTUAL ALLEGATIONS:

24.     The Plaintiffs repeat and reallege the facts previously pled herein.

25.     On or around August 1, 2016, Letha's Pies was facing what was believed to be a temporary cash-flow shortage. Letha's Pies had been contacted by PC, without solicitation by Letha's Pies, via electronic mail and by telephone to market the PC Merchant Agreement. Desperate for a cash-infusion, Letha's Pies filled out an application and discussed the PC Merchant Agreement with a PC representative on the phone. Ultimately, Letha's Pies agreed to sign the PC Merchant Agreement marketed and offered to them by PC.

26.     During the discussions between the parties, the Defendants mischaracterized the PC Merchant Agreement as simply a purchase of future account receivables – one in which PC agreed to purchase one hundred three thousand, nine hundred and four dollars ($103,904.00) (Specified Amount) worth of Plaintiffs' future account receivables for an immediate payment of seventy-six thousand four hundred dollars ($76,400.00) (Purchase Price).

27.     However, no specific account receivables were ever marked for assignment from Plaintiffs to PC pursuant to the PC Merchant Agreement, and no accounts were ever specifically assigned.

28.     Instead, the smaller print contained in the PC Merchant Agreement shows it was not for the purchase of a specific set of account receivables but was instead the acquisition of a percentage of the merchant's gross funds received. This contract arrangement resulted in a type of ownership interest that is in the nature of a preferred stock interest or a preferred bond, both of which are securities under Arkansas law.[4]

29.     More specifically, the PC Merchant Agreement offered by the Defendants states that in exchange for $76,400.00 ("Purchase Price"), PC would become entitled to withdraw from Letha's Pies' depository account or credit card processing account $285.45 per business day until PC collected $103,904.00 ("Specified Amount"), irrespective of the source of deposits. The $285.45 per day reflected approximately 14% of Letha's Pies' average daily collections ("Purchase Percentage"). Collecting $285.45 a day from Letha's Pies, five days a week results in PC collecting $103,904.00 in just 72 weeks – resulting in an annual preferred return on the investment in Letha's Pies of approximately 28%.

30.     The PC Merchant Agreement required that Letha's Pies assign all its future accounts and rights related to the future payment of monies from its customers or any other third party until the Specified Amount was paid in full. It further allowed PC to, at any time, adjust the daily amount of receipts to be remitted by Letha's Pies so that the amount remitted by Letha's Pies equaled 14% of daily deposits.  To wit, if Letha's Pies' average monthly revenue improved, PC would be paid back sooner equaling a higher annual rate of return for PC. Conversely, if Letha's Pies' average revenue declined, PC's annual rate of return would also decline.

---

[4] The purchasing of accounts receivables (also referred to as a factoring agreement) entails the identification and purchase of specific accounts receivable at a discounted rate. Usually, the selected account receivable[s] are discounted by a percentage of between 10%-30% with that amount being advanced to the merchant. As the selected receivables are collected, the moneys are used to repay the advanced portion, then pay the financier a factoring fee of between 1-5%, with the remainder going to the merchant. In sum, the financing fee is around 1-5% for recourse factoring. For an example of a Factoring Arrangement, see http://www.jdfinancial.com/factoring-services.php .

8

31.     The PC Merchant Agreement further states that payments made to Letha's Pies were conditioned upon its sale of products or services and added that the merchant will only use the purchase price for commercial purposes and not personal purposes.

32.     The PC Merchant Agreement was secured by 1) a Security Agreement that gave a security interest in all Letha's Pies' assets; 2) a Personal Guarantee wherein the Merchant's principal owner[s] personally guaranteed the obligations contained in the PC Merchant Agreement, and 3) a power of attorney giving PC the ability to immediately debit from the Plaintiff's bank account[s] any unpaid amount regardless of the source of those account funds.

33.     Upon default, PC maintained the right under the PC Merchant Agreement to accelerate the amount owed under the preferred investment and immediately execute on the business assets of Letha's Pies, withdraw all funds from its depository accounts and enforce the personal guarantee to receive the preferred return on the investment in Letha's Pies.

34.     To bolster its claim that the PC Merchant Agreement is not a loan, PC states that the failure to pay the daily remittance amount does not constitute a breach of the agreement (scheduled payments is indicative of a loan). Instead, PC asserts that it is simply acquiring 14% of daily receipts and assumes the risk that the merchant's daily receipts might decline.

35.     Despite PC's claims that it assumes the risk that the merchant's business might decline, PC treats the failure to remit the daily remittance amount as a breach of the PC Merchant Agreement. According to lawsuits filed by PC to enforce an identical Merchant Agreement against another merchant, PC defines default as "failure to remit the required payments pursuant to the terms thereunder (referencing the daily payment amount)."[5]

---

[5] *See* verified complaint in *Principis Capital, LLC v. Just Me Inc., et. al.* Civil Court of New York, County of New York, Index No.: 160396 (Doc. No. 1)

9

36.    When Letha's Pies experienced a downturn in their business and was unable to pay the daily remittance amount of $285.45, PC declared Letha's Pies to be in default of the PC Merchant Agreement and, using its power of attorney, withdrew all of the funds being held in an account owned by Tim Glenn's son (who was not a party to the PC Merchant Agreement nor had any connection to Letha's Pies). PC was able to reach the son's account because Tim Glenn was named as a signatory on the account when the account was first opened.

37.    The PC Merchant Agreement further required the merchant to pay an Account Set Up Fee in the amount of one thousand one hundred forty-six dollars ($1,146). Based on information and belief, some or all this amount went to pay for referral or origination fees.

38.    Finally, the PC Merchant Agreement could be transferred by PC without any restriction or limitation.

39.    Despite the PC Merchant Agreement having some characteristics normally associated with a short-term note that is secured by the company's assets and a personal guarantee, the PC Merchant Agreement, promoted by the Defendants, states that Letha's Pies is not borrowing money from PC but instead selling future receipts.

40.    The PC Merchant Agreement states that it is to be interpreted by New York law whose courts have held that the amount of return is not usurious because the PC Merchant Agreement is not a loan.

41.    This lawsuit does not challenge New York's interpretation and is not arguing that the PC Merchant Agreement is usurious. Instead, the PC Merchant Agreement is the equivalent of the purchase of a limited time, preferred ownership interest similar to a preferred partnership interest and has all the characteristics of and, therefore, is a security under Arkansas law.

42.     In sum, the PC Merchant Agreement calls for PC to invest in the merchant through a lump sum payment. This investment allows PC to share in the daily profits earned by Letha's Pies for a limited time and which is dependent on the management skills of Letha's Pies management team. As such, PC's rate of return is directly tied to the management of Letha's Pies. However, PC does not have any control over Letha's Pies policy decisions. Finally, by obtaining a security interest in the business, PC ensures that its preferred investment interest in Letha's Pies will be the first to be paid back should Letha's Pies fail as a business.

43.     The PC Merchant Agreement constitutes a security because it represents an investment of money into a business venture's risk capital with the expectation of a benefit but without direct control over the merchant's policy decisions. In addition, the Defendants are sophisticated financiers dealing with general merchants who are not sophisticated financiers.[6]

44.     As further evidence of the fact that PC Merchant Agreements are securities, the industry has now begun to securitize these preferred investment interests. Hundreds, if not thousands, of merchant cash agreements are pooled based on the merchant's credit worthiness, rated, and then sold to third parties.

45.     The PC Merchant Agreement described above is a form contract with the same material terms being used for all of PC's agreements with merchants throughout Arkansas.

46.     The PC Merchant Agreement is a security as that term is defined under the Arkansas Securities Act.

47.     At all relevant times, neither the Defendants, nor their representatives, held any securities licenses, were not registered with the Arkansas Securities Department, were not associated with registered broker-dealers within Arkansas, and were not permitted to market, offer,

---

[6] See Waters v. Millsap, 2015 Ark. 272, 13, 465 S.W.3d 851, 858 (2015).

11

or recommend the PC Merchant Agreement within the State of Arkansas. Nevertheless, the Defendants and their representatives did market, offer and recommend the PC Merchant Agreement within the State of Arkansas in violation of the Arkansas Securities Act.

48.     Further, the PC Merchant Agreements were not registered with the Arkansas Securities Department nor did they qualify for an exemption from registration. As such, the Defendants were not permitted to market and/or offer the PC Merchant Agreement to the Plaintiffs.

49.     The Defendants, through agreements with independent sales organizations, third-party sales representatives, and employees to market and offer MCAs within the State of Arkansas, were aware of the unlawful actions being taken by their agents. The Defendants maintained sufficient controls over their sales agents to constitute liability as a secondary offender under the Arkansas Securities Act.

50.     Currently, the Merchant Cash Advance industry is operating without any regulatory oversight. For the protection of Arkansas merchants, this lawsuit seeks to change that reality.

## IV.     CLASS ACTION ALLEGATIONS

### A. *State Class*

51.     The Plaintiffs repeat and reallege the facts previously pled herein.

52.     Plaintiffs allege a class action on behalf of Arkansas residents pursuant to Rule 23 of the Arkansas Rules of Civil Procedure on behalf of a class of all Arkansas persons and entities who entered into Merchant Agreements with PC either as the merchant or as a personal guarantor ("Class") between the date of this filing and three years past ("Class Period") and who paid PC more money than what PC paid to the merchant.

53.     The members of the Class are so numerous that joinder of all members is impracticable. Throughout the Class Period, Defendants were actively marketing and offering the PC Merchant Agreement to individuals and/or entities residing in Arkansas. While the exact number of Class members is unknown to the Plaintiffs at this time, it is believed that the number is in the hundreds. Class members may be identified easily from records maintained and controlled by the Defendants and may be notified of this action by mail, using the form of notice similar to that customarily used in securities class actions.

54.     There is a well-defined community of interest in the questions of law and fact involved in this case. Questions of law and fact common to the members of the Class which predominate over questions which may affect individual Class members include:

a.  Whether the PC Merchant Agreement meets the definition of a security under the Arkansas Securities Act.

b.  Whether the PC Merchant Agreement was registered with the Arkansas Securities Department.

c.  Whether the PC Merchant Agreement was exempt from the registration requirement under the Arkansas Securities Act.

d.  Whether the Defendants were registered with the Arkansas Securities Department to sell securities in Arkansas or exempt from such registration requirement.

e.  Whether the Defendants made a communication in the State of Arkansas to market and/or offer to purchase or to buy any security without a registration statement having been filed or being in effect as to such a security.

f.  Whether the Defendants or their representatives, directly or indirectly, while acting as a broker or dealer, effected transactions in, or induced or attempted to induce the purchase

13

or sale of securities in the State of Arkansas while they were not registered with the Arkansas Securities Department.

g. Whether the Defendants or their representatives violated Ark. Code Ann. § 23-42-507.

h. Whether the Defendants have liability under the Arkansas Securities Act as a primary and/or secondary offender.

i. The extent of damages sustained by Class members and the appropriate measure of damages. Whether the class would be entitled to rescission of the security and what portion of the consideration exchanged between the parties is the Class entitled to.

55.     Plaintiffs' claims are typical of the Class because Plaintiffs and the Class maintain the same cause of action and sustained the same type of damage.

56.     Plaintiffs will adequately protect the interest of the Class and has retained experienced counsel. Neither the Plaintiffs, nor their legal counsel, have interests that conflict with those of the Class.

57.     A class action is superior to other available methods for the fair and efficient adjudication of this controversy. Furthermore, as the damages suffered by certain individual Class members may be relatively small, the expense and burden of individual litigation makes it impossible for members of the Class to individually redress the wrongs done to them. There will be no difficulty in the management of this action as a class action.

58.     With the filing of this Complaint, the Plaintiffs are tendering the consideration paid by PC in exchange for a refund of the amount paid to PC by recognition of the offset recognized in the amount of damages sought.

## V.     **CAUSES OF ACTION**

### Count I.  *Failure to Register the Merchant Agreement with Arkansas Securities Department*

14

59.    The Plaintiffs repeat and reallege the facts previously pled herein.

60.    The PC Merchant Agreement is a security as that term is defined by Ark. Code Ann. § 23-42-102 and is not excluded from the registration requirement.

61.    During the Class Period, the PC Merchant Agreement was never registered with the Arkansas Securities Department.

62.    During the Class Period, the Defendants successfully solicited the purchase of a security motivated at least in part by their own financial interests and actively promoted, marketed and/or offered to sell or offered to buy the above described unregistered security to Arkansas citizens and/or Arkansas entities.

63.    As a result of the Defendants' violation of the Arkansas Securities Act, the Plaintiff and the putative Arkansas Class members are entitled to rescind the PC Merchant Agreement and recover the total amount of funds paid by the Plaintiffs and member of the Class (including any referral or origination fee) to the Defendants under the terms of the Security less the amount paid to Plaintiff Class for the preferred interest in the business.

## Count II. *Marketing Securities by an Unregistered Broker/Dealer under Arkansas law*

64.    The Plaintiffs repeat and reallege the facts previously pled herein.

65.    The Defendants did, through their representatives, induce or attempt to induce the purchase or sale of a security within the State of Arkansas without being registered as a broker-dealer or agent with the Arkansas Securities Department as required by Ark. Code Ann. §23-42-301 and the regulations of the Arkansas Securities Department. *See* Code Ark. R. 214.00.1-101 *et. al.*

15

66.     As a result of the Defendants' violation of the Arkansas Securities Act, the Plaintiff and the putative Arkansas Class members are entitled to rescind the PC Merchant Agreement and recover the amount of consideration paid by them for such security with interest thereon, less the amount of any income received from the security.

67.     As further damages, the Plaintiffs and the putative Arkansas Class are entitled to a disgorgement of any profits and/or commission earned by any unregistered broker-dealer or agent through the marketing of the PC Merchant Agreement to Arkansas residents and/or entities.

*Count III: Violation of Ark. Code Ann. §23-42-507*

68.     The Plaintiffs repeat and reallege the facts previously pled herein.

69.     The Defendants through their representatives, did, in connection with the offer, sale, or purchase of a security, directly or indirectly:

a)      Employ a device, scheme, or artifice to defraud;

b)      Make an untrue statement of a material fact or omitted to state a material fact necessary in order to make the statements made, in light of the circumstances under which they are made, not misleading; and/or

c)      Engaged in acts, practices, or course of business which operated as a fraud or deceit upon the Plaintiffs.

70.     More specifically, the Defendants falsely asserted that the PC Merchant Agreement was not a debt instrument when in fact the failure to pay would result in personal liability for the guarantors and with the UCC filing the Defendants would maintain a priority claim on the business' assets.

71.     Further, the Defendants falsely asserted that the merchant were only selling an asset. In fact, there was no asset identified and the future income stream that was identified was

16

only theoretical in nature. Instead of selling an asset, the merchants were transferring a preferred interest in their respective companies.

72.     The Defendants falsely asserted that the PC Merchant Agreement was simply a purchase of future account receivables, when in fact it was a security.

73.     The Defendants falsely asserted that the failure to pay the daily remittance amount due to a decline in receipts would not constitute default under the PC Merchant Agreement.

*Count IV: Liability as a Secondary Offender*

74.     The Plaintiffs repeat and reallege the facts previously pled herein.

75.     The Defendants were aware of the marketing and offering of securities by independent sales representatives and/or employees within the State of Arkansas.

76.     The Defendants controlled whether the independent sales representatives and/or employees were able to market and offer unregistered securities within the State of Arkansas.

77.     The Defendants were further aware that their independent sales representatives and/or employees were not registered brokers/dealers with the Arkansas Securities Department.

78.     The Defendants controlled whether they permitted unregistered brokers/dealers to market/offer their MCA to Arkansas merchants.

79.     Additionally, the Defendants were aware that independent sales representatives and/or employees were making false statements to induce Arkansas merchants to enter into the MCAs.

80.     The Defendants controlled and encouraged the false statements being made by its independent sales representatives and/or employees to Arkansas merchants.

81.     As such, the Defendants are liable as Secondary Offenders under Ark. Code Ann. § 23-42-106 (d).

17

## VI.   PRAYER FOR RELIEF

82.   WHEREFORE, Plaintiffs, on behalf of themselves and all members of the Putative

Class, respectfully request this Court:

a.  Certify this action as a class action on behalf of the proposed class pursuant to Ark. R.

Civ. P. 23, defined as:

All Arkansas individuals/entities that executed a Merchant Agreement, or substantially
similar agreement with the Defendants between the date of this filing and three years
past and who paid the Defendants an amount of money greater than the amount
received from the Defendants.

b.  Designate the Plaintiffs as Representatives of the Class;

c.  Appoint below named counsel as class counsel;

d.  Enter a declaratory judgment that the practices complained of herein are unlawful under

Arkansas state law;

e.  Enter an immediate order for a complete and accurate accounting of all moneys paid to

the Plaintiffs and putative class members as well as all moneys paid to the Defendants

by the Plaintiffs and putative class members;

f.  Enter a judgment against the Defendants for rescission of all Merchant Agreements

entered into between putative class members and the Defendants and award the

Plaintiffs and putative class members an amount equal to the amount Defendants

received from the Plaintiffs and putative class members minus any money Defendants

paid to the Plaintiffs and putative class members.

g.  Award the Plaintiffs and putative class members an amount equal to the disgorgement

of profits earned by the Defendants as commissions for the sales of Merchant

Agreements;

18

h.  Award the Plaintiffs and putative class members an amount equal to the amount of moneys paid in commissions or origination fees to persons who marketed, offered, and/or solicited MCAs within the State of Arkansas.

i.  Grant Plaintiffs and putative class members all recoverable costs, expenses, and attorney fees incurred in prosecuting these claims, together with all applicable interest;

j.  Enter an injunction against the Defendants preventing the marketing, offering, and soliciting of Merchant Cash Agreements in Arkansas until the Defendants bring their actions into compliance with Arkansas law.

k.  Grant Plaintiffs all such further relief as the Court deems just and appropriate.

## VII.   JURY DEMAND

83. Plaintiffs demand a jury trial on all issues so triable.

Respectfully Submitted,

/s/ Tim Hutchinson
Tim Hutchinson (AR0030)
Larry McCredy (AR07152)
Seth Haines (AR 04068)
Bo Renner (AR17130)
RMP LLP
P.O. Box 1788
Fayetteville, AR 72702
Ph: (479) 443-2705
Fax: (479) 443-2718
thutchinson@rmp.law
lmccredy@rmp.law
shaines@rmp.law
brenner@rmp.law

Matthew Bishop (AR 01276)
BISHOP LAW FIRM
3739 N. Steele Blvd, Ste. 380
Fayetteville, AR  72703
Ph: (479) 363-6171

Fax: (479) 363-6461
matt@bishoplawfirm.org

*Attorneys for Plaintiffs and Putative Class*

## **VERIFICATION**

STATE OF ARKANSAS              )
                              )ss.
COUNTY OF WASHINGTON           )

I, Rhonda Glenn, on oath state I am the controlling member of Letha's Pies, LLC, the Plaintiff in the above-styled case, and I have read the allegations and statements contained in the foregoing and that the same are true and correct to the best of my knowledge, information and belief. I further state on my oath:

- That I did not purchase the security that is the subject of this complaint at the direction of plaintiff's counsel or in order to participate in any private action arising under Arkansas law.
- That I am willing to serve as a representative party on behalf of the class, including providing testimony at deposition and trial, if necessary;
- That facts described in this Complaint set forth all of the transactions between the Plaintiff and the named Defendants;
- I have never sought to serve as a class representative before;
- I will not accept any payment for serving as a representative party on behalf of a class beyond my pro rata share of any recovery, except as ordered or approved by the Court.

Rhonda Glenn

Natalia Lutz
Notary Public

Commission Ends:    S. 7. 2028

21

## **VERIFICATION**

STATE OF ARKANSAS )
)ss.
COUNTY OF WASHINGTON )

I, Timothy Glenn, on oath state I am a non-controlling member of Letha's Pies, LLC, the Plaintiff in the above-styled case, and I have read the allegations and statements contained in the foregoing and that the same are true and correct to the best of my knowledge, information and belief. I further state on my oath:

- That I did not purchase the security that is the subject of this complaint at the direction of plaintiff's counsel or in order to participate in any private action arising under Arkansas law.
- That I am willing to serve as a representative party on behalf of the class, including providing testimony at deposition and trial, if necessary;
- That facts described in this Complaint set forth all the transactions between the Plaintiff and the named Defendants;
- I have never sought to serve as a class representative before;
- I will not accept any payment for serving as a representative party on behalf of a class beyond my pro rata share of any recovery, except as ordered or approved by the Court.

Timothy Glenn

Natalia Lutz
Notary Public

Commission Ends: 5.7.2028